**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENIFER BLUM, JAMIE DUMELLE, AMANDA OFFLEY, KERRY HINES and TANISHA DIVITO, individually and on behalf of all others similarly situated, | Case No.  2:22-cv-2044 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| FASHION NOVA, LLC, | |
| Defendant. | |

Plaintiffs Jenifer Blum, Jamie Dumelle, Amanda Offley, Kerry Hines, and Tanisha DiVito (collectively, "Plaintiffs"), by their undersigned attorneys, bring this class action complaint against Fashion Nova, LLC ("Defendant" or "Fashion Nova"). Plaintiffs' allegations are based upon personal knowledge as to their own acts and upon information and belief as to all other matters.

## <u>NATURE OF ACTION</u>

1.     This is an action regarding Defendant's intentional suppression of hundreds of thousands of 1-star, 2-star, and 3-star consumer reviews (alternatively, the "Lower-Starred Reviews") from its online website to artificially inflate the value of its products.

2.     When shopping online, consumers heavily rely on reviews from fellow shoppers.  In fact, ninety-three percent (93%) of adults in the United States read reviews before making online purchases.[1]

3.     Fashion Nova, an almost exclusively online retailer,[2] has made millions of dollars selling clothing, apparel, accessories, and more (collectively, the "Products") on its website, fashionnova.com.

4.     Taking advantage of the fact that prospective consumers rely on fellow consumers' reviews prior to making an online purchase, Defendant intentionally suppressed Lower-Starred Reviews for all Products on its website.

5.     Specifically, the Federal Trade Commission found that "[f]rom as early as late 2015 through mid-November 2019, Fashion Nova chose to have four- and five-

---

[1] https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews

[2] Fashion Nova has approximately five brick-and-mortar stores, however, generates a significant amount of its sales from its online website. https://www.fashionnova.com/pages/locations

---

star reviews automatically post to the website, but did not approve or publish *hundreds of thousands lower-starred, more negative reviews.*"[3]

6.     Had Defendant not engaged in these deceptive and unfair practices, the average ratings, and inherent value to prospective consumers, of Defendant's Products would have been lower.  Moreover, the written reviews would have provided more information to prospective consumers, including concerns over the quality of the Products, prior to deciding whether to purchase said Products.  As a result, had Defendant not suppressed the Lower-Starred Reviews, Plaintiffs and other consumers would not have purchased a number of Products, or would have paid substantially less for the Products, because the Products would have been rated poorly and deterred Plaintiffs and other consumers from making purchases.

7.     Plaintiffs assert claims on behalf of themselves and similarly situated purchasers of Defendant's Products for violations of the consumer protections laws of California, Florida, New Jersey, and Michigan, as well as unjust enrichment.

## THE PARTIES

8.     Plaintiff Jenifer Blum is a resident of Diamond Bar, California and has an intent to remain there, and is therefore a domiciliary of California.  While in California, Ms. Blum purchased a dress from Defendant's website in June 2018.  Ms. Blum reviewed and relied on the highly rated consumer reviews on the Product prior to purchasing said Product.  Had Defendant not suppressed the Lower-Starred Reviews of the Product, Ms. Blum would not have purchased the Product or would have paid substantially less for it.

9.     Plaintiff Jamie Dumelle is a resident of Lauderhill, Florida and has an intent to remain there, and is therefore a domiciliary of Florida.  While in Florida, Ms. Dumelle purchased multiple dresses from Defendant's website in November 2018.

---

[3] https://www.ftc.gov/news-events/news/press-releases/2022/01/fashion-nova-will-pay-42-million-part-settlement-ftc-allegations-it-blocked-negative-reviews (emphasis added).

Ms. Dumelle reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Products.  Had Defendant not suppressed the Lower-Starred Reviews of the Products, Ms. Dumelle would not have purchased the Products or would have paid substantially less for them.

10.     Plaintiff Amanda Offley is a resident of Brockton, Massachusetts and has an intent to remain there, and is therefore a domiciliary of Massachusetts.  While in Massachusetts, Ms. Offley purchased multiple pairs of swimsuits and shorts from Defendant's website in May 2018.  Ms. Offley reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Products.  Had Defendant not suppressed the Lower-Starred Reviews of the Products, Ms. Offley would not have purchased the Products or would have paid substantially less for them.

11.     Plaintiff Kerry Hines is a resident of Clifton, New Jersey and has an intent to remain there, and is therefore a domiciliary of New Jersey.  While in New Jersey, Ms. Hines purchased multiple shirts, dresses, jeans, and skirts from Defendant's website in February 2018, September 2018, October 2018, and November 2018.  Ms. Hines reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Products.  Had Defendant not suppressed the Lower-Starred Reviews of the Products, Ms. Hines would not have purchased the Products or would have paid substantially less for them.

12.     Plaintiff Tanisha DiVito is a resident of Detroit, Michigan and has an intent to remain there, and is therefore a domiciliary of Michigan.  While in Michigan, Ms. DiVito purchased a jacket, sweater, and pair of jeans from Defendant's website in December 2018.  Ms. DiVito reviewed and relied on the highly rated consumer reviews on the Products prior to purchasing said Products.  Had Defendant not suppressed the Lower-Starred Reviews of the Products, Ms. DiVito would not have purchased the Products or would have paid substantially less for them.

13.     Plaintiffs are reasonable consumers and are not required to scrutinize consumer reviews to ferret out misleading facts and omissions (nor could they), and cannot ascertain facts that are in Defendant's exclusive control.   Defendant had exclusive control over consumer reviews published on its website, and its practice to deliberately suppress Lower-Starred Reviews from its websites.

14.     Defendant Fashion Nova, LLC is a California corporation and is headquartered at 2801 E. 46th Street, Vernon, California 90058.  Defendant owns and manages a primarily online retail business that generates approximately $500 million in revenue per year.

## <u>JURISDICTION AND VENUE</u>

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A).  There are more than 100 Class Members, the aggregate claims of all members of the proposed Class exceed $5,000,000.00, exclusive of interest and costs, and at least one Class Member is a citizen of a state different than Defendant.

16.     Defendant is an "unincorporated association" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Defendant is therefore "a citizen of the State where it has its principal place of business [California] and the State under whose laws it is organized [California]."  *See* 28 U.S.C. § 1332(d)(10).

17.     This Court has personal jurisdiction over Defendant because Defendant is incorporated and has its principal place of business in California.

18.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant resides in this District.

## **FACTUAL BACKGROUND**

19.   When shopping online, consumers heavily rely on reviews made by fellow shoppers.  In fact, ninety-three percent (93%) of adults in the United States read reviews before making online purchases.[4]

20.   This statistic makes sense.  When consumers purchase products online, they are not able to see the product for themselves and are unlikely to trust what a company will say regarding the quality of its own product.

21.   As a result, consumers want to see what fellow consumers, who have already made the purchase, have to say.  However, not only do consumers want to hear what others who have already made the purchase have to say, consumers also trust and are influenced by others in their position, as roughly "90% of consumers say that positive online reviews influence their buying decisions."[5]

22.   One popular form of consumer reviews is leaving a star-rating of the product, ranging from one-star to five-star, with an attached comment explaining why the consumer left such a rating.  Five stars means that, on average, past purchasers thought that the product was very good.  One star means that, on average, past purchasers though that the product was very bad.



---

[4] https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews

[5] https://medium.com/@BBBNWP/the-power-of-reviews-and-how-consumers-rely-on-them-to-make-purchases-51fcbcebd376

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

23.    Consumers rely on these reviews, and the aggregate average star rating of the product just as much as any other type of consumer review.  In fact, consumers generally will not even consider a product unless it has a minimum average star-rating of 3.4 stars.[6]



24.    In other words, products with too many lower-star reviews are products that future consumers will not want to purchase or will not pay as much for.

25.    Defendant, taking advantage of all this information, enacted unfair and deceptive provisions on its online website regarding consumer reviews of its Products.

26.    Specifically, Defendant, through a third-party interface, suppressed any and all Lower-Starred Reviews on all Products on its online website from 2015 to 2019.

27.    By intentionally suppressing the Lower-Starred Reviews, Defendant achieved two important goals.  *First*, Defendant was able to artificially inflate the average star rating for each Product on its website, thus making each Product look more attractive to all prospective consumers.

28.    With only four-star and five-star reviews remaining on each Product, the lowest average star-rating for any Product on Defendant's website could not be lower than a 4.0 average star-rating, well above the 3.4 average minimum consumers look for when considering a purchase.

---

[6] https://www.podium.com/state-of-online-reviews/



29.    Thus, Defendant's conduct directly led to a false average star rating for all Products on its website.

30.    Importantly, this also meant that Defendant inflated the value of each Product, and therefore the price of each Product, in which reviews were suppressed.

31.    *Second*, Defendant's conduct omitted any consumer warnings and/or concerns with the Products, information that other consumers should have been given access to prior and would have utilized to determine whether to purchase Products on Defendant's website.

32.    The following are lower-starred consumer reviews on Defendant's website in the past two years—since Defendant ceased suppressing Lower-Starred Reviews on its website—addressing the size, fit, and quality, or lack thereof, of Defendant's Products:





| ★ ☆ ☆ ☆ ☆ | **CHEAP** |
| Jevonie B. | Size Purchased: Medium    Usual Size: Medium |
| October 30, 2021 | The zipper was cheap and poorly made |

| ★ ☆ ☆ ☆ ☆ | **BAD** |
| Vanessa M. | Size Purchased: Small    Usual Size: Small |
| January 12, 2022 | The zipper came broke I want my money back asap |

| ★ ★ ☆ ☆ ☆ | **TOO SMALL , I NORMALLY** |
| Leome W. | Size Purchased: 7    Usual Size: 7.5 |
| December 28, 2021 | Too small , I normally get a 7 may be bit tight however can't even get my foot in Should be more clear if sizes aren't true to size |

33.     These are just some examples of the types of information that from 2015 to 2019 were not available for consumers to review prior to purchasing a Product on Defendant's website.

34.     In sum, from 2015 to 2019, consumers relied on Defendant's representations that the Products were highly rated by fellow consumers and did not have any issues.

35.     Consumers during that time period had no way of knowing that Defendant was suppressing Lower-Starred Reviews, and were instead left to think that the Products were simply highly rated and of high-quality.

36.     In January 2022, the Federal Trade Commission ("FTC") found that Defendant had been suppressing lower-starred consumer reviews throughout its website from 2015 to 2019.[7]

37.     Specifically, the FTC found that Defendant "installed a third-party online product review management interface.  The interface allow[ed] users to choose to have

---

[7] https://www.ftc.gov/system/files/documents/cases/192_3138_fashion_nova_complaint.pdf.

certain reviews automatically post based upon their star ratings and hold lower-starred reviews for client approval prior to posting."[8]

38.   Importantly, "[f]rom as early as late 2015 through mid-November 2019, Fashion Nova chose to have four- and five-star reviews automatically post to the website, but did not approve or publish *hundreds of thousands lower-starred, more negative reviews.*"[9]

39.   Defendant's representations of the Products during the above time period were materially misleading in that they were likely to deceive a reasonable consumer of other purchasers' true feelings and experiences with the Products, which were more negative than was otherwise advertised.

40.   As a direct and proximate result of Defendant's misrepresentations, material omissions, and deceptive practices in its website, Plaintiffs and others similarly situated consumers have suffered actual injuries from their purchase of one or more of the Products because Plaintiffs and other consumers would not have purchased the Products, or would have paid significantly less for them, had Defendant not suppressed the Lower-Starred Reviews.

## CLASS ACTION ALLEGATIONS

41.   Plaintiffs seek to represent a class defined as all persons in the United States who purchased an item from Fashion Nova's website from January 1, 2015 through and including December 25, 2018 (the "Nationwide Class").

42.   Plaintiff Jenifer Blum seeks to represent a class defined as all persons within the State of California who purchased an item from Fashion Nova's website from January 1, 2015 through and including December 25, 2018 (the "California Class").

---

[8] *Id.*

[9] *Id.* (emphasis added).

43.     Plaintiff Jamie Dumelle seeks to represent a class defined as all persons within the State of Florida who purchased an item from Fashion Nova's website from March 28, 2018 through and including December 25, 2018 (the "Florida Class").

44.     Plaintiff Kerry Hines seeks to represent a class defined as all persons within the State of New Jersey who purchased an item from Fashion Nova's website from March 28, 2016 through and including December 25, 2018 (the "New Jersey Class").

45.     Plaintiff Tanisha DiVito seeks to represent a class defined as all persons within the State of Michigan who purchased an item from Fashion Nova's website from March 28, 2016 through and including December 25, 2018 (the "Michigan Class").

46.     The aforementioned Classes shall collectively be referred to as "the Classes."

47.     Excluded from the Classes are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

48.     Plaintiffs reserve the right to modify or expand the definition of the Classes to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  The precise number of Class Members and their identities are unknown to Plaintiffs at this time but will be determined through discovery of Defendant's records.  Class Members may be notified of the pendency of this action by mail, email, and/or publication.

50.   Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  These common legal and factual questions include, but are not limited to:

(a)   whether the online reviews for Fashion Nova items on its website included false and/or misleading statements and/or omissions;

(b)   whether Defendant's conduct violated the FAL;

(c)   whether Defendant's conduct violated the UCL;

(d)   whether Defendant's conduct violated the Florida Deceptive and Unfair Trade Practices Act;

(e)   Whether Defendant's conduct violated the New Jersey Consumer Fraud Act;

(f)   whether Defendant's conduct violated the Michigan Consumer Protection Act; and

(g)   whether Defendant was unjustly enriched by its conduct.

51.   Plaintiffs' claims are typical of the claims of the proposed Classes they seek to represent because Plaintiffs, like all members of the Classes, purchased the Products from Defendant's website during the relevant class periods without knowing that Lower-Starred Reviews were being suppressed by Defendant.  The representative Plaintiffs, like all members of the Classes, have been damaged by Defendant's misconduct in the very same way as the members of the Classes.  Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

52.   Plaintiffs are adequate representatives of the Classes they seek to represent because their interests do not conflict with the interests of the members of the Classes they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action

vigorously.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

53.    A class action is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of a defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violations of California's Unfair Competition Law ("UCL")
### Business & Professions Code § 17200, *et seq.*

54.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

55.    Plaintiff Blum brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Class.

56.    This claim is brought under the laws of California.

57.    Defendant has violated California's UCL by engaging in unlawful, fraudulent, and unfair conduct (*i.e.*, violating each of the three prongs of the UCL).

### *The Unlawful Prong*

58.    Defendant engaged in unlawful conduct by violating the FAL, and all other statutes referenced herein.

59.     Defendant also engaged in unlawful conduct by violating Section 5(a) of the FTC Act,[10] which states that "unfair or deceptive acts of practices in or affecting commerce … are … declared unlawful."

***The Fraudulent Prong***

60.     As alleged in detail above, Defendant's practice of deliberately suppressing Lower-Starred Reviews was deceptive and misleading.  Defendant's practice of artificially inflating reviews was likely to deceive, and did deceive, reasonable consumers like Plaintiff Blum and members of the Nationwide Class and California Class into believing that Defendant's Products were of a higher quality that they really were and/or consumers viewed the Products more favorably than they truly did.

61.     As a result of these deceptive and misleading practices, Defendant induced Plaintiff Blum and members of the Nationwide Class and California Class into purchased Products that Plaintiff Blum and members of the Nationwide Class and California Class would not have purchased, or would have paid substantially less for, had Defendant not suppressed the Lower-Starred Reviews.

***The Unfair Prong***

62.     Defendant's conduct was unfair because, by deliberately suppressing Lower-Starred Reviews without disclosing this to purchasers, Defendant tricked consumers into thinking that previous purchasers of its Products had a more positive view of the Products than they truly did.  This is unfair because it led consumers to purchaser Products they wouldn't otherwise purchase, or pay more for Products than they otherwise would. This deceptive practice is also unfair because it gives Defendant an unfair advantage over competitors.

63.     Plaintiff Blum and the Nationwide Class and California Class could not have reasonably avoided this injury.  Only Defendant was aware that it was hiring a

---

[10] *See* 15 U.S.C. § 45(a)(1).

third-party company to suppress the Lower-Starred Reviews, and consumers did not become aware of this fact until the FTC action in January 2022.

\*     \*     \*

64.    For all prongs, Defendant's deceptive conduct was intended to induce reliance, and Plaintiff Blum and members of the Nationwide Class and California Class saw, read, and reasonably relied on the Products' artificially-inflated reviews and review scores when purchasing the Products.  Defendant's deceptive and unfair conduct was a substantial factor in Plaintiff Blum's purchasing decisions and the purchasing decisions of Nationwide Class and California Class members.

65.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff Blum and members of the Nationwide Class and California Class.

66.    There was no benefit to consumers or competition from suppressing the Lower-Starred Reviews of the Products.

67.    Plaintiff Blum and the members of the Nationwide Class and California Class have suffered harm as a result of the violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid.

## COUNT II
### Violation of California's False Advertising Law
### Business & Professions Code § 17500, *et seq.*

68.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

69.    Plaintiff Blum brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Class against Defendant.

70.    This claim is brought under the laws of California.

71.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state … in any advertising device …

or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

72.   Between January 1, 2015 through and including December 25, 2018, Defendant committed acts of false advertising, as defined by the FAL, by suppressing Lower-Starred Reviews using artificially inflated reviews for its Products to attract more purchasers than its Products would otherwise have received and induce consumers to purchase Products or pay more for the Products than consumers otherwise would have.

73.   Defendant knew or should have known, through the exercise of reasonable care, that its Products' artificially inflated reviews were untrue and misleading.

74.   Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

75.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff Blum and members of the Nationwide Class and California Class have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff Blum and the Nationwide Class and California Class would not have purchased Defendant's Products or would have paid substantially less for the Products had Defendant not suppressed the Lower-Starred Reviews, thus revealing to consumers the Products' true qualities and characteristics; (b) Plaintiff Blum and the Nationwide Class and California Class paid an increased price for the Products based on their artificially-inflated reviews; and (c) the Products did not have the promised value.

76.   Plaintiff Blum and the Nationwide Class and California Class are therefore entitled to: (a) full restitution of all monies paid to Defendant as a result of

their deceptive practices; (b) interest at the highest rate allowable by law; and (c) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT III
### Violation of the Florida Unfair and Deceptive Practices Act, Fla. Sta. §§ 501.201, *et seq*.

77.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

78.    Plaintiff Dumelle brings this claim individually and on behalf of the members of the proposed Florida Class against Defendant.

79.    This claim is brought under the laws of Florida.

80.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. § 501.204.

81.    Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202.

82.    FDUPTA can be violated in two ways, both of which are relevant to this case.  *First*, Defendant has committed a "traditional" violation of FDUPTA by engaging in unfair and/or deceptive acts and practices which caused injury to Plaintiff Dumelle and members of the Florida Class.

83.    *Second*, Defendant has committed a *per se* violation of FDUPTA predicated on a violation of the FTC Act.  Specifically, "unfair or deceptive acts of practices in or affecting commerce … are … declared unlawful" pursuant to 14 U.S.C. § 45(a)(1), and Defendant has therefore violated FDUPTA.  Fla. Stat. Ann. § 501.203(3)(c) (explaining that a FDUPTA violation may be based on "[a]ny law,

statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.").

84.     While FDUPTA does not define "deceptive" or "unfair," Florida courts have looked to the Federal Trade Commission's interpretations for guidance. "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (internal quotation marks and citation omitted). Courts define a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers. *Fed. Trade Comm'n v. Partners In Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1356, 1367 (S.D. Fla. 2016). Courts define an "unfair trade practice" as any act or practice that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010).

85.     Defendant engaged in conduct that was likely to deceive members of the public. This conduct includes using a third-party interface to deliberately suppress lower-starred reviews of its Products to artificially inflate its Products' review scores and attract more purchasers than its Products would otherwise have received, and/or induce consumers to purchase Products consumers would not have purchased or pay more for Products than consumers otherwise would have.

86.     As alleged herein, Plaintiff Dumelle and members of the Florida Class have suffered injury in fact and lost money as a result of Defendant's conduct because they purchased Defendant's Products in reliance on Defendant's artificially inflated reviews and incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

87.     Thus, Plaintiff Dumelle and members of the Florida Subclass have been "aggrieved" (*i.e.*, lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

88.     As alleged herein, Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff Dumelle and the Florida Class to damages and relief under FDUPTA.

89.     By committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices, which constitute unfair competition within the meaning of FDUTPA.

90.     Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's own Product reviews, which it directly controls, consumers could not have reasonably avoided such injury.

91.     Accordingly, Defendant is liable to Plaintiff Dumelle and the Florida Class for damages in amounts to be proven at trial, including attorneys' fees and costs.

### COUNT IV
**Violation of New Jersey Consumer Fraud Act,**
**N.J. Stat. §§ 56:8-1, *et seq.***

92.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

93.     Plaintiff Hines brings this claim individually and on behalf of the members of the New Jersey Class against Defendant.

94.     This claim is brought under the laws of New Jersey.

95.     Plaintiff Hines and New Jersey Class members have suffered an injury in fact and lost money or property as a result of Defendant's violations of New Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. §§ 56:8-1, *et seq.*

96.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the

knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise." N.J. Stat. § 56:8-2.

97.    Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Products in the course of Defendant's business.  Specifically, Defendant used a third-party interface to deliberately suppress Lower-Starred Reviews of its Products to artificially inflate its Products' review scores and attract more purchasers than its Products would otherwise have received, and/or induce consumers to purchase Products consumers would not have purchased or pay more for Products than consumers otherwise would have.

98.    Had Defendant not engaged in these misleading, deceptive, and false practices, Plaintiff Hines and members of the New Jersey Class would not have purchased the Products on the same terms and would have paid substantially less for the Products.

99.    The existence of Lower-Starred Reviews would have been material to Plaintiff Hines and members of the New Jersey Class.

100.    Plaintiff Hines and members of the New Jersey Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiff Hines and members of the New Jersey Class would not have purchased the Products on the same terms had they known the truth about the Products.  Specifically, Plaintiff Hines and members of the New Jersey Class were damaged by the difference in value of the Products as represented without the Lower-Starred Reviews versus the value of the Products had the Lower-Starred Reviews not been suppressed, in an amount to be determined through expert testimony and at trial.

101.   Pursuant to N.J. Stat. § 56:8-19, Plaintiff Hines and members of the New Jersey Class seek an order awarding damages and any other just and proper relief available under the NJCFA.

102.   In accordance with N.J. Stat. § 56:8-20, a copy of this complaint will be sent to the New Jersey Attorney General within ten (10) days of filing the same.

## COUNT V
### Violation of Michigan Consumer Protection Act,
### Mich. Comp. Laws §§ 445.901, *et seq.*

103.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

104.   Plaintiff DiVito brings this claim individually and on behalf of the members of the Michigan Class against Defendant.

105.   This claim is brought under the laws of Michigan.

106.   The Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws §§ 445.901, *et seq.* declares that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful."

107.   Plaintiff DiVito and members of the Michigan Class are "persons" and Defendant's conduct complained of herein constitutes "trade or commerce." Mich. Comp. Laws § 445.902.

108.   Defendant's practice of posting false, misleading, and artificially-inflated reviews/suppressing Lower-Starred Reviews, as described more fully herein, was an unfair, unconscionable, and/or deceptive method, act, or practice in the conduct of trade, which violates the MCPA.

109.   Specifically, Defendant violated the MCPA by using a third-party interface to deliberately suppress Lower-Starred Reviews of its Products to artificially inflate its Products' review scores and attract more purchasers than its Products would otherwise have received. Had Defendant not engaged in this misleading, deceptive, and false practices, Plaintiff DiVito and Michigan Class members would not have

purchased the Products on the same terms and would have paid substantially less for the Products.

110.   Plaintiff DiVito and members of the Michigan Class have been substantially injured by Defendant's unfair and deceptive practices in that they reasonably relied on the artificially inflated reviews/were not aware of the suppressed Lower-Starred Reviews when deciding to purchase Defendant's Products.  As a result of Defendant's suppression of the Lower-Starred Reviews and in reliance on the artificially inflated reviews, Plaintiff DiVito and members of the Michigan Class purchased Products that they believed were of a higher quality or were viewed more favorably by other consumers than the Products actually were.

111.   The damages suffered by Plaintiff DiVito and the Michigan Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant, as more fully described herein.  Indeed, Plaintiff DiVito and the Michigan Class members would not have purchased the Products, or would not have paid as much as for the Products as they did, but for Defendant's suppression of the Lower-Starred Reviews.

112.   Pursuant to Mich. Comp. Laws §§ 445.911(1) and (3), Plaintiff DiVito and members of the Michigan Class seek damages in the amount of actual damages or $250, whichever is greater, together with reasonable attorneys' fees.

**COUNT VI**
**Unjust Enrichment**

113.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

114.   Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class against Defendant.

115.   This claim is brought under the laws of California.

116.   Plaintiffs and the Nationwide Class conferred a benefit on Defendant in the form of monies paid to purchase Defendant's Products without knowledge that

Defendant had suppressed the Lower-Starred Reviews.

117.   Defendant voluntarily accepted and retained this benefit.

118.   Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Products without disclosing that it had suppressed the Lower-Starred Reviews, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)   For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the respective Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

(b)   For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)   For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)   For prejudgment interest on all amounts awarded;

(f)   For an order of restitution and all other forms of equitable monetary relief;

(g)   For an order requiring Defendant to undertake a corrective advertising campaign;

(h)   For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit; and

(i)   Granting such other and further relief as may be just and proper.

1

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues so triable.

Dated: March 28, 2022                    **BURSOR & FISHER, P.A.**

By:  */s/ L. Timothy Fisher*
L Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorney for Plaintiffs*